1

2

3

4

5            **UNITED STATES DISTRICT COURT**

6            **EASTERN DISTRICT OF CALIFORNIA**

7

8    JEFFREY GRANT PEABODY,                    CASE NO. 1:14-CV-1433-SMS

9                    Plaintiff,

                                              ORDER AFFIRMING AGENCY'S
10         v.                                 DENIAL OF BENEFITS AND ORDERING
                                              JUDGMENT FOR COMMISSIONER
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
12                                            (Doc. 16)
                    Defendant.
13

14

15          Plaintiff Jeffrey Grant Peabody, by his attorney, seeks judicial review of a final decision of

16   the Commissioner of Social Security ("Commissioner") denying his application for disability

17   insurance and supplemental insurance benefits pursuant to Titles II and XVI of the Social Security

18   Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties'

19   cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder,

20   United States Magistrate Judge.  Following a review of the complete record and applicable law,

21   this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by

22   substantial evidence in the record as a whole and based on proper legal standards.

23      I.      **Background**

24          A.  Procedural History

25          In August 2008, Plaintiff filed applications for disability insurance benefits and

26   supplemental security income, alleging an onset of disability date of May 1, 2008. An

27   administrative law judge denied Plaintiff's claim in May 2010.

28          In April 2011, Plaintiff filed new applications for disability insurance benefits and

supplemental security income, alleging an onset of disability date of September 30, 2010. The

Commissioner initially denied the claims on August 25, 2011, and upon reconsideration again

denied the claims on May 11, 2012.  On June 6, 2012, Plaintiff filed a timely request for a hearing.

On January 9, 2013, and represented by counsel, Plaintiff appeared and testified at a

hearing presided over by Christopher Larsen, Administrative Law Judge ("the ALJ").  See 20

C.F.R. 404.929 et seq.  An impartial vocational expert, Judith Najarian ("the VE"), also appeared

and testified.

On February 7, 2013, the ALJ denied Plaintiff's application.  The Appeals Council denied

review on July 9, 2014.  The ALJ's decision thus became the Commissioner's final decision.  See

42 U.S.C. § 405(h).  On September 12, 2014, Plaintiff filed a complaint seeking this Court's

review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff was fifty years old. He was married and lived with

his wife. He had finished high school and completed one year in junior college. He last worked in

2008 installing rain gutters. At that time, he had one or two employees, including his son, and was

responsible for bidding, installing the gutters, payroll, hiring and firing, and scheduling. He had

this business for about four years. In 2010, he had some income from this business from jobs

which were awarded to him but were performed by his son and a friend. Prior to this, Plaintiff was

briefly employed as a travelling salesman. Prior to that, Plaintiff was an office manager and buyer.

Regarding his physical ailments, Plaintiff testified that he believed he could work five

days, but not a full month due to onset of boils due to hidradenitis suppurativa. Plaintiff testified

that the boils would sometimes become the size of an orange or bigger. He had boil outbreaks one

to three times a month. From the time they appear, they remain for an average of ten days. During

these ten days, the pain was excruciating. When he had an outbreak, he mostly lied down because

movement caused more pain. For the first few days he would be in bed for sixteen hours. After

that, during its "peak," he could only get up to use the restroom. During that time, it was too

painful to sit in a chair, stand, or walk. His condition has worsened. Each area becomes bigger

each time it has an outbreak.

1    Plaintiff testified that the larger boils need to be drained. He had boil outbreaks in the groin

2    area, on the inside and outside of his legs, in the armpits, on his arms, and on his back and side.

3    Plaintiff was prescribed methadone for pain. He also took antibiotics.

4    Plaintiff also testified that he had sleep apnea and diabetes for the last few years. He used a

5    CPAP which helped him rest, and medication to control diabetes.

6    Plaintiff had not driven a car since 2008. He relied on his wife and daughter to take him

7    places. He expressed displeasure with his being unable to work, provide for his family, or play

8    with his grandchildren.

9        C.   Relevant Medical Record

10    During the relevant time period, Plaintiff regularly saw Mario Ochoa, M.D., at Kingsburg

11    Medical Center. Plaintiff had appointments with Dr. Ochoa about once a month, but sometimes

12    more often and sometimes less. The treatment notes indicate boils or scars on different places

13    including thighs, legs, sides of abdomen, and right thumb. E.g. AR 273, 333. Dr. Ochoa also noted

14    swelling and numbness of legs and feet, anxiety, diabetes, hypertension, extensive scarring, and

15    body-ache secondary to extensive scarring and inflammatory skin condition. Dr. Ochoa noted that

16    Plaintiff reported that a friend stole his prescription for Xanax and Norco,  so alternative

17    medication, methadone, was prescribed instead. AR 275. The last appointment in the record was

18    in July 2011. AR 273.

19    On March 20, 2012, Roger Wagner, M.D., performed a comprehensive internal medicine

20    evaluation. Dr. Wagner noted that Plaintiff cooks and cleans, shops, and performs activities of

21    daily living without assistance. He walks for exercise. Dr. Wagner observed that Plaintiff was

22    easily able to get out of a chair and walk without assistance and without the cane he carried with

23    him. He was able to get on and off the exam table and take his shoes on and off without difficulty.

24    Plaintiff declined to walk on his toes and heels due to his left ankle pain. Dr. Wagner found that

25    hidradenitis suppurativa was present primarily on the anterior thighs. At the time, it seemed to be

26    managed "reasonably well." He had multiple small scars on the upper arms and thighs. Dr.

27    Wagner observed multiple scars and three or four active lesions on each thigh, multiple scars on

28    the upper arms, but no lesions or scars in the axillae (armpits) or on the head. A few lesions were

1   progressing near the groin area. He also noted diabetes with numbness in the soles of his feet, and

2   left ankle pain with significant swelling. Plaintiff had a full range of motion in the left ankle and it

3   was only minimally tender. Dr. Wagner opined that Plaintiff could stand and walk for up to six

4   hours, and sit without limitation. He assessed that Plaintiff could lift and carry 100 pounds

5   occasionally and fifty pounds frequently. Dr. Wagner assessed no postural or manipulative

6   limitations. He recommended that Plaintiff avoid working around extremely hot temperatures. The

7   ALJ did not specifically state how much weight he gave Dr. Wagner's opinion, but expressed that,

8   without having treated Plaintiff himself, Dr. Wagner would be less able to accurately evaluate

9   Plaintiff's long-term functional capacity than a treating physician. The ALJ's RFC determination

10  is more restrictive than Dr. Wagner's.

11       On March 28, 2012, E. Aquino-Caro, M.D., reviewed the record and opined that the

12  evidence supported an RFC to perform light work. Dr. Aquino-Caro noted that Plaintiff needed

13  assistance with personal activities of daily living if boils were interfering with his hands and arms.

14  She found his allegations to be partially credible because he was walking with a cane but was not

15  using it and did not appear to need it. Plaintiff claimed that he was unable to perform any type of

16  work, but there was normal range of motion and motor strength in both upper and lower

17  extremities. Dr. Aquino-Caro noted that Plaintiff's skin infection may be due to a source other

18  than hidradenitis supperativa, which is usually confined to the intertriginous areas of the body,

19  whereas Plaintiff's lesions mostly occurred on the thighs and arms.

20       On April 10, 2012, W. Jackson, M.D., reviewed the record and completed a physical

21  residual functional capacity assessment. AR 317. Dr. Jackson opined that Plaintiff could lift

22  twenty pounds occasionally and ten pounds frequently, stand and walk for about six hours and sit

23  for about six hours in an eight-hour workday. Dr. Jackson found that Plaintiff was not limited in

24  pushing and pulling, and assessed no postural, manipulative, or visual limitations. Regarding

25  environmental limitations, Dr. Jackson found that Plaintiff should avoid concentrated exposure to

26  extreme heat, wetness, and humidity. He did not explain his conclusions. The ALJ gave little

27  evidentiary weight to Dr. Jackson's opinion because the medical evidence established that

28  Plaintiff's impairments were more severe than they may have appeared at that time, and Dr.

4

1   Jackson had not adequately considered Plaintiff's subjective complaints.

2       On July 5, 2012, Plaintiff's treating physician, Dr. Ochoa, completed a physical capacities

3   evaluation. AR 322. Dr. Ochoa opined that Plaintiff could stand sit, stand, and walk for a total of

4   one hour each, alternating sitting and standing every thirty minutes. He opined that Plaintiff could

5   not use his feet for repetitive movements, could not use his hands for pushing and pulling when

6   boils were present, but could use his hands for fine manipulation.

7       On November 9, 2012, Dr. Ochoa completed another physical capacities evaluation, which

8   stated that Plaintiff could sit for a total of two hours a day, and stand and walk for a total of one

9   hour each. AR 356. He did not mention alternating sitting and standing, but added that Plaintiff

10  would need to rest for a total of three hours in addition to normal break and meal periods. He

11  stated that Plaintiff could use both feet for repetitive moments, could use his hands for pushing

12  and pulling without limitation, and could not use his hands for fine manipulation. He additionally

13  restricted Plaintiff's environmental capacity regarding humidity, vibration, fumes and hazards. Dr.

14  Ochoa did not explain why these two evaluations varied. The ALJ stated that "[c]ertain aspects of

15  the doctor's opinion are in fact consistent with my assessment of [Plaintiff's] residual functional

16  capacity."

17      Plaintiff's mental impairments are not at issue on appeal. Hence, his mental health record

18  is not summarized here.

19      D.  Vocational Expert Testimony

20      At the administrative hearing, the VE classified Plaintiff's past work as buyer (DOT #

21  162.157-018, light (performed at medium), SVP 6), office manager (DOT # 169.167-034,

22  sedentary (performed at light), SVP 7), metal fabricator (DOT # 619.361-014, heavy (performed at

23  medium), SVP 7), and sales (DOT # 274.357-034, light, SVP 5). The ALJ asked the VE to assume

24  a hypothetical person of Plaintiff's same age, education, and work experience, who could lift and

25  carry ten pounds occasionally and less than ten pounds frequently; stand and walk a total of two

26  hours and sit for a total of six hours in an eight-hour day; never climb ladders, ropes or scaffolds;

27  occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. The ALJ further

28  limited the hypothetical person to avoiding concentrated exposure to extreme heat and to

5

performing simple, repetitive tasks with occasional public contact. The VE opined that such a person could not perform any of Plaintiff's past relevant work, but could perform some unskilled sedentary jobs. The VE opined that the hypothetical person could perform work as an ampoule sealer (DOT # 559.687-014, sedentary, SVP 2), sedentary assembler (DOT # 706.684-030, sedentary, SVP 2), and table worker (DOT # 739.687-182, sedentary, SVP 2). The VE testified that these jobs existed in substantial numbers in the state and national economy.

The ALJ then directed the VE to assume a second hypothetical person with Plaintiff's same age, education, and work experience, but would be likely to miss five or more days of work per month. The VE opined that there would not be any jobs in the economy for that worker.

E.  Disability Determination

After considering the evidence, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015.  The ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability. The ALJ found that Plaintiff had the following severe, medically determinable impairments: diabetes, obesity, hidradenitis suppurativa, sleep apnea, depressive disorder, and anxiety disorder. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. He found that Plaintiff had the residual functional capacity ("RFC") to lift and carry ten pounds occasionally, and less than ten pounds frequently; stand and walk for two hours and sit for six hours in an eight-hour work day; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. He further found that Plaintiff must avoid concentrated exposure to extreme heat and was limited to simple, repetitive tasks with occasional public contact.  The ALJ found that Plaintiff was unable to perform any of his past relevant work. However, the ALJ found that before October 22, 2012, Plaintiff could perform jobs that existed in significant numbers in the national economy. On October 22, 2012, Plaintiff's age category changed, and the ALJ found that Plaintiff could not perform any jobs existing in significant numbers in the national economy. Hence, he determined that Plaintiff was "not disabled" prior to October 22, 2012, and became disabled on that date.

## II.   **Legal Standard**

### A.   The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a) (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work.  *Id.* §§ 404.1520(f), 416.920(f).  If

1  not, in step five, the burden shifts to the Commissioner to show that the claimant can perform

2  other work that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g),

3  416.920(g).

4  B.  Standard of Review

5  Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  The record as a whole must be considered, weighing both the

7  evidence that supports and the evidence that detracts from the Commissioner's decision.

8  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks

9  omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper

10  legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If an ALJ

11  applied the proper legal standards and the ALJ's findings are supported by substantial evidence,

12  this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov*

13  *v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial

14  evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of*

15  *Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind

16  might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

17  2005). Where the evidence as a whole can support either outcome, the Court may not substitute its

18  judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

19  **III.  Discussion**

20  The ALJ found Plaintiff to be disabled as of October 22, 2012. Plaintiff appeals the finding

21  of nondisability between September 30, 2010, the alleged date of disability, and October 22, 2012.

22  Plaintiff brings four issues on appeal: 1) that the ALJ erred in failing to find that his hidradenitis

23  suppurativa impairment met a listing; 2) that the ALJ erred in discounting treating physician

24  Mario Ochoa, M.D.'s opinion; 3) that the ALJ erred in discounting Plaintiff's credibility; and 4)

25  that the ALJ erred in failing to consider laywitness testimony.

26  A.  Step Three – Listed Impairments

27  Plaintiff argues that his skin disorder meets the listing criteria, and the ALJ erred at his

28  step-three finding that Plaintiff's hidradenitis suppurativa did not meet a listed impairment. The

8

1    ALJ stated that he specifically considered Listing 8.06 for hidradenitis suppurativa. Listing-level

2    hidradenitis suppurativa is described as "extensive skin lesions involving both axillae, both

3    inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as

4    prescribed." 20 C.F.R § 404, Subpart P, Appendix 1 at § 8.06. The appendix gives some insight

5    into an intended distinction between three months of ongoing treatment generally and three

6    months of persisting lesions: "if you do not have continuing treatment as prescribed, if your

7    treatment has not lasted for at least 3 months, or if you do not have extensive skin lesions that

8    have persisted for at least 3 months, your impairment cannot meet the requirements of these skin

9    disorder listings." Id. at § 8:00(H)(1).

10       Plaintiff argues that he endured recurring outbreaks in all three areas identified by the

11   listing for two years. However, the medical evidence and Plaintiff's testimony suggest otherwise.

12   First, Plaintiff testified that his lesions lasted ten days on average. This does not meet the listing

13   requirement that the lesions have persisted at least three months. Moreover, Dr. Wagner's

14   examination revealed scars and lesions on the upper arms and thighs, but specifically did not

15   reveal scars or lesions in the axillae. Dr. Wagner's examination revealed lesions on the thighs

16   *approaching* the groin, but not in the inguinal areas or perineum. Plaintiff's treating physician, Dr.

17   Ochoa, noted that the lesions were present on his thighs, sides of abdomen, and right thumb. This

18   evidence demonstrates that he did not have lesions in both axillae, both inguinal areas or the

19   perineum as required to meet the listed impairment. Therefore, the ALJ's finding that Plaintiff's

20   impairments did not meet a listed impairment is without legal error and supported by substantial

21   evidence in the record.

22       B.   Plaintiff's RFC

23       Plaintiff argues that the ALJ improperly rejected treating physician Dr. Ochoa's opinion

24   that Plaintiff could only sit for two hours and stand and walk for one hour in a workday, required

25   rest breaks totaling three hours, and that he could not use his hands for fine manipulation.

26       Plaintiff mischaracterizes the ALJ's treatment of Dr. Ochoa's opinion. The ALJ did not

27   reject Dr. Ochoa's opinion in coming to his RFC determination. ALJ reviewed all medical

28   evidence, including Dr. Ochoa, Wagner's two different opinions, and, as required by his role,

established Plaintiff's RFC, which is supported by the record.

*Applicable Law*

An RFC "must be based on *all* of the relevant evidence in the case record," including medical history, medical source statements daily activities, lay evidence. SSR 96-8p; 20 CFR 404.1545 ("[The ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence."). The ALJ's RFC determination will not be overturned if the ALJ applied the proper legal standard and the RFC assessment is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(internal quotation and citation omitted).

In addition, an ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2. A treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602 (9th Cir. Or. 1999)(*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

*Analysis*

Here, the ALJ was not required to unequivocally accept Plaintiff's treating physician's opinion in determining Plaintiff's RFC. Dr. Ochoa's opinions were contradicted, even among each other. Dr. Ochoa's medical notes do not specify Plaintiff's limitations. However, his notes state that Plaintiff has "disabling" hydroxiadenitis and that his flare-ups are "frequent." His functional capacity opinions were highly restrictive, indicating that Plaintiff was only able to stand and sit for one hour each per day and required frequent breaks. In contrast, Dr. Wagner opined that Plaintiff had no sitting limitations and could stand for six hours in a day. Dr. Jackson opined that Plaintiff could sit and stand for six hours each per day. Dr. Aquino-Caro opined that Plaintiff only needed

1   assistance with personal activities when lesions were interfering with his hands and arms.

2       Also, Plaintiff was prescribed pain medication for his skin condition, but still testified that

3   he experienced excruciating pain during an outbreak. Dr. Ochoa did not alter his pain medication

4   except when his medication was reported stolen, and Plaintiff was not entirely compliant with his

5   medication. Plaintiff specifically requested that his pain medication not be increased because of

6   his concern of dependency. AR 277. After changing Plaintiff's pain medication from Norco to

7   methadone because of the alleged theft, Dr. Ochoa did not alter Plaintiff's pain medication.

8       The ALJ found that Plaintiff's condition was less severe at the time of the consultative

9   examination and that Dr. Ochoa had a better perspective regarding Plaintiff's long-term disability.

10  The ALJ also found that Plaintiff was able to function at a capacity greater than Dr. Ochoa opined.

11  Plaintiff was able to get to and from his doctor's appointments, the administrative hearing, the

12  store, and his mother's home. He was able to prepare some meals and do some housework. He

13  was able to sit through and participate in the hearing and the consultative examination. Plaintiff's

14  testimony was that his pain is particularly bad for ten days during an outbreak, a few days of

15  which he could not get out of bed unless necessary. He testified that outbreaks occurred at least

16  once a month. However, as is discussed below, the ALJ properly discredited Plaintiff's symptom

17  testimony. The evidence as a whole, therefore, supports an RFC that is less restrictive than Dr.

18  Ochoa's, but more restrictive than Dr. Wagner's.

19      As noted above, the ALJ's finding must be supported by substantial evidence, which

20  consists of "more than a mere scintilla but less than a preponderance." Here, the ALJ assessed an

21  RFC that is less restrictive than Dr. Ochoa's opinion, but more restrictive than Dr. Wagner's. The

22  ALJ found that Plaintiff could stand for two hours and sit for six hours in a workday. He did not

23  find that Plaintiff would miss a notable number of workdays in a month. Although the evidence

24  may support a more restrictive RFC finding, the ALJ's RFC finding is supported by substantial

25  evidence in the record and will not be overturned.

26      C.  Plaintiff's Credibility

27      Plaintiff argues that the ALJ did not provide specific, clear, and convincing reasons to

28  reject Plaintiff's testimony. Plaintiff argues that the ALJ only rejected Plaintiff's credibility based

on his activities of daily living and his lack of compliance with medication. Plaintiff argues that these reasons are not convincing and not supported by the record.

*Applicable Law*

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Where an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's subjective symptom testimony so long as it is not the only reason for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Although the credibility analysis need not be extensive, the ALJ must provide some reasoning in

1    order to meaningfully determine whether the ALJ's conclusions were supported by substantial

2    evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

3         When weighing a claimant's credibility, the ALJ may consider the claimant's reputation

4    for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct,

5    claimant's daily activities, claimant's work record, and testimony from physicians and third

6    parties about the nature, severity and effect of claimant's claimed symptoms.  *Light v. Social*

7    *Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary

8    techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent

9    statements concerning the symptoms, and other testimony by the claimant that appears less than

10   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

11   prescribed course of treatment; and (3) the claimant's daily activities."  *Tommasetti v. Astrue*, 533

12   F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the

13   ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her

14   decision.  *Thomas*, 278 F.3d at 959.

15   *Analysis*

16        Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

17   be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the

18   intensity, persistence, and limiting effects of the symptoms were not credible to the extent that

19   they were inconsistent with the ALJ's RFC analysis. The ALJ discounted Plaintiff's credibility

20   determination based on the discrepancy between his testimony and the objective medical evidence,

21   the discrepancy between his testimony and his daily activities, his lack of compliance with

22   medication, and Dr. Wagner's observations during the consultative examination.

23        The ALJ states that, overall, the objective medical evidence does not support Plaintiff's

24   allegations of utterly disabling symptoms. The ALJ noted that there were very few objective

25   medical findings. Plaintiff testified to having lesions in his armpits and groin, but Dr. Ochoa's

26   treatment notes and Dr. Wagner's consultative examination did not reveal lesions or scars in either

27   area.  Dr. Wagner's examination revealed mostly normal findings, with scarring and lesions on his

28   thighs and upper arms. Dr. Ochoa prescribed pain medication, but did not alter his prescription

despite Plaintiff's allegations of excruciating pain which caused him to remain in bed for entire days at a time. Plaintiff's allegations of lesions and his allegations of severe pain are not supported by the objective medical findings.

The ALJ also found that Plaintiff's alleged daily activities do not support his allegations of disabling symptoms. The ALJ pointed to Plaintiff's wife's statement. Plaintiff's wife wrote in her statement that Plaintiff sat outside, watched television, folded clothes, visited with others, went to the store, went out alone, and sometimes cared for the dogs. He occasionally needed help with his personal grooming needs. The ALJ also noted that Plaintiff told a consultative examiner that he cooked, shopped, cleaned, and watched television. While these activities are not particularly vigorous and may not translate directly to a finding that Plaintiff could sustain full-time work, the ALJ's finding that they impact his credibility as to his symptom's allegations is reasonable and may be considered along with other facts in reaching a credibility determination.

The ALJ also noted that Plaintiff's lack of compliance with his medication indicated that his symptoms were not as limiting as alleged. This is a specific, clear, and convincing reason to discount Plaintiff's credibility when taken together with others.

The ALJ also summarized Dr. Wagner's observations. Dr. Wagner noted that Plaintiff brought a cane, but did not appear to use or need the cane. Dr. Wagner also noted that Plaintiff had left-ankle pain and declined to walk on his heels and toes; however, Plaintiff was able to remove his shoes and get on and off of the examination table and Dr. Wagner noted a full range of motion and only minimal tenderness in the left ankle. These observations from the record may also reasonably cast doubt on Plaintiff's credibility.

In sum, the ALJ found that Plaintiff's medical record, including physicians' observations, did not sustain allegations of disabling impairments; Plaintiff's described daily activities were inconsistent with his complaints of disabling symptoms; and, Plaintiff's lack of compliance with his medication indicated that his symptoms were not as disabling as alleged. Taken together, these reasons are sufficiently specific, clear, and convincing grounds which are supported by substantial evidence in the record to discount Plaintiff's credibility.

D. Laywitness Testimony

14

1    Plaintiff argues that the ALJ erred in giving little weight to Plaintiff's wife's statement

2    regarding Plaintiff's limitations. He also argues that he erred in failing to account for three

3    additional family members and a friend's statements submitted in support of Plaintiff's

4    application.

5        Lay witness testimony is competent evidence to which the ALJ, if he wishes to discount

6    lay witness testimony, must give reasons germane to each witness. *Stout v. Comm'r, Soc. Sec.*

7    *Admin.*, 454 F.3d 1050 (9th Cir. 2006). The Ninth Circuit has held that inconsistency with medical

8    evidence constitutes a legitimate reason for discrediting the testimony of lay witnesses. *See*

9    *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Bayliss v. Barnhart*, 427 F.3d

10   1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). To the extent that

11   the lay witness statements were of the same general nature as the subjective complaints from the

12   plaintiff's testimony, the ALJ's legally sufficient reasons for rejecting the plaintiff's subjective

13   symptom testimony also constituted legally sufficient reasons for rejecting the lay witness

14   statements. *See Valentine v. Commissioner, Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

15   Further, an ALJ's failure to comment on lay witness testimony is harmless where the same

16   evidence that the ALJ cited in discrediting the claimant's testimony also discredits the lay witness'

17   claims. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

18       Plaintiff's wife's statement set forth her opinion that his condition affected his ability to

19   lift, squat, concentrate, and otherwise posture. The ALJ gave her comments regarding his

20   limitations little weight because she did not quantify the limitations she described, other than his

21   ability to walk half a block before resting, which was inconsistent with the medical evidence. This

22   reason is sufficient for discrediting laywitness testimony. In addition, the ALJ's failure to consider

23   statements from his three other family members and friend was harmless because they either

24   reiterated Plaintiff's asserted limitations, which were properly discredited, or did not add anything

25   valuable. For example, Plaintiff's mother's statement largely describes Plaintiff's former hobbies

26   and family relationships. AR 258-259. His brother's statement expresses remorse that he is unable

27   to visit Plaintiff very often. AR 260. Hence, the ALJ properly considered Plaintiff's wife's

28   testimony, and his failure to consider other laywitness testimony is harmless.

1

**IV.**     **Conclusion and Order**

2

    For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards

3

and that substantial credible evidence supported the ALJ's determination that Plaintiff was not

4

disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative

5

decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter

6

judgment in favor of the Commissioner and against Plaintiff.

7

8

IT IS SO ORDERED.

9

10

Dated:   __**February 10, 2016**__              _____**/s/ Sandra M. Snyder**
                                             UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16